**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 24, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP2146**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2022ME4**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF G.T.H.:

WAUPACA COUNTY,

  PETITIONER-RESPONDENT,

 V.

G. T. H.,

  RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Waupaca County: VICKI L. CLUSSMAN, Judge. *Reversed*.

¶1      BLANCHARD, J.[1]  G.T.H. appeals an order of the circuit court extending his involuntary commitment under WIS. STAT. ch. 51 following an

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

evidentiary hearing to the court.[2] G.T.H. argues that the court erred by admitting and taking into consideration hearsay evidence and that the error was not harmless. Specifically, he contends the court erred in admitting and considering the testimony of a psychiatrist and a county crisis worker regarding alleged past incidents involving G.T.H., based on descriptions of the incidents contained in G.T.H.'s treatment records or in statements of out-of-court declarants. The County argues that this testimony was admissible either because it had informed an expert opinion or because it was not offered for its truth. As alternative arguments, the County contends that the general rule barring hearsay does not apply to commitment extension proceedings, or at least does not apply in cases of this type, and that any error in admitting the challenged testimony was harmless. I conclude that the circuit court erroneously exercised its discretion by admitting and considering the hearsay testimony and that the County fails to show that the error was harmless. Accordingly, I reverse.

## BACKGROUND

¶2      In May 2021, G.T.H. was involuntarily committed pursuant to a circuit court order. *See **Waupaca Cnty. v. G.T.H.**,* No. 2021AP1490, unpublished slip op. (WI App Dec. 23, 2021). This order was reversed on appeal to this court. *Id.*

---

[2] G.T.H. also appeals an order for involuntary medication and treatment. But I need not summarize testimony relating to this topic or otherwise address it separately for the following reasons. G.T.H.'s sole basis for challenging the medication order depends on his challenge to the commitment order. Further, the County does not argue that there is an independent basis to affirm the order for involuntary medication and treatment if I reject, as I do, the County's arguments regarding the evidentiary issue involving extension of the involuntary commitment. *See* WIS. STAT. § 51.61(1)(g).

¶3 A few weeks after reversal of that order, on January 9, 2022, G.T.H. was placed in emergency detention. *See* WIS. STAT. § 51.15(1)(ar)-(b). The statement of emergency detention filed by a sheriff's deputy alleged that, while driving a vehicle, G.T.H. intentionally "hit [an] occupied vehicle." The statement further alleged that he had "been deteriorating since stopping medications over [a] 2 week span" and suffered from an "[i]nability to safety plan due to disorganized thoughts." The circuit court subsequently determined after a hearing that there was probable cause to conclude that G.T.H. was a proper subject for involuntary commitment. *See* WIS. STAT. § 51.20(7). The court appointed two examiners for G.T.H. *See* § 51.20(9). The examiners opined that G.T.H. was a proper subject for commitment, and, after a final hearing, the court issued an order committing G.T.H. for 6 months. *See* § 51.20(10), (13).

¶4 The County petitioned for an extension of G.T.H.'s commitment in June 2022. The circuit court appointed a single examiner, psychiatrist Marshall Bales.

¶5 G.T.H. filed a motion in limine to exclude hearsay testimony. Specifically, he made the following request:

> That the County, through its expert, be prohibited from offering for its truth testimony regarding the contents of records otherwise not admissible at trial, but, used by an expert in forming an opinion. Although experts may base an opinion on hearsay under WIS. STAT. § 907.03, that statute does not transform the hearsay into admissible evidence. **S.Y. v. Eau Claire Cnty.**, 156 Wis. 2d 317, 327-28, 457 N.W.2d 326 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 320, 469 N.W.2d 836 (1991); **Walworth Cnty. v. Therese B.**, 2003 WI App 223, ¶¶8-9, 267 Wis. 2d 310, 671 N.W.2d 377.

(Brackets for alterations to citations omitted.)

¶6     At the beginning of the extension hearing, G.T.H. brought this motion in limine to the circuit court's attention. The court stated that it would rule on issues of evidence admissibility as they might arise during trial.

¶7     At the hearing, the County called two witnesses: Dr. Bales and Chris Lashock, a crisis worker with the County's department of health and human services.

¶8     In order to recommit G.T.H., the County bore the burden to prove by clear and convincing evidence that he was mentally ill, a proper subject for treatment, and dangerous to himself or others under one of five statutory standards. WIS. STAT. § 51.20(1)(a)1.-2., (13)(g)3.; *See **Portage Cnty. v. J.W.K.**,* 2019 WI 54, ¶18, 386 Wis. 2d 672, 927 N.W.2d 509 ("An extension requires the County to prove … by clear and convincing evidence [that] … the individual is mentally ill and a proper subject for treatment, and … the individual is dangerous."). There is no dispute in this appeal that the testimony of Dr. Bales and Lashock established that G.T.H. was mentally ill (per Bales, due to a "schizoaffective disorder") and that he was a proper subject for treatment. Therefore, in the following summary the focus is on testimony bearing on the only contested issue at trial—whether the County could meet its burden to prove dangerousness.

¶9     Dr. Bales testified that he attempted multiple times to meet with G.T.H. in person or by video call, but without success, and that he relied on "collateral sources" to complete his examination. Sources included a report completed by Bales himself from the 2021 commitment and the reports of two other examiners who were appointed following the 2022 emergency detention. As Bales began to testify about the examiners' reports from the 2022 emergency

4

detention, G.T.H. objected to Bales "ventur[ing] into reading the findings of those reports into the record." The circuit court overruled the objection, without providing a rationale.

¶10 Dr. Bales further testified as follows. He summarized what the deputy reported in the January 2022 statement on emergency detention regarding the allegation that G.T.H. intentionally drove into an occupied vehicle. Bales further summarized other "historical[]" events "go[ing] back ten years," testifying that G.T.H. had "put his mother in fear," "set off fire alarms[,] and had put a pillow over his mother's face." Records from the mental health hospital in which G.T.H. was held for his emergency detention "indicate he becomes very manic, irritable, and threatening," in addition to describing him as repeatedly "nonsensical." One of the examiners from the initial 2022 commitment "had to abbreviate his exam due to concern for [the examiner's] safety."

¶11 Throughout this testimony by Bales, G.T.H. made multiple additional objections on hearsay grounds, and was overruled without explanation by the circuit court. Eventually, G.T.H. made a "standing objection for hearsay when there's reference to other doctor's documents," which the court "noted for the record."[3]

---

[3] The County does not develop an argument that I should reject any of G.T.H.'s arguments on appeal based on his failure to preserve an issue in the circuit court. The County briefly asserts that some of Lashock's testimony was given "without objection," but in doing so the County fails to take into account G.T.H.'s standing objection and more generally does not offer a legally supported argument for forfeiture.

¶12     Dr. Bales concluded that if the treatment provided to G.T.H. were withdrawn "he will stop his medications, stop getting mental health care, and I believe he will have to be re-detained after becoming dangerous or in danger."

¶13     Lashock testified regarding the following incidents, although he explained that he did not witness any of them but instead only heard about them from others or read about them in written statements prepared by others. In November 2020, Lashock authorized the emergency detention of G.T.H. based on an incident in which G.T.H. had allegedly set a fire in his kitchen sink and, according to a law enforcement officer, was in a "manic condition." G.T.H. held a pillow up to his mother's face, without smothering her, but in a way that made her fearful. Lashock also noted the deputy's emergency detention statement from January 2022 about the alleged vehicle-striking incident. Notes from the mental health hospital in which G.T.H. was held for his emergency detention in early 2022 stated that he was "seclud[ed]" as a safety precaution due to "being verbally aggressive" and "charg[ing] at a door."

¶14     Lashock further testified that, based on his conversations with G.T.H., G.T.H. would likely stop taking his medication if treatment were withdrawn. During past periods of decompensation following G.T.H. going off his medication, Lashock continued, G.T.H. becomes "quite manic," his "judgment is impacted," and he lacks "orient[ation] to his surroundings."

¶15    The County did not move to authenticate any exhibits or to admit any into evidence.[4]

¶16    G.T.H. did not call any witnesses. In his closing argument, he again emphasized his objections that any hearsay testimony provided by Bales or Lashock should not be relied upon as proof of incidents occurring in support of the County's case for meeting the dangerousness requirement.

¶17    The circuit court concluded that, based on the testimony of Dr. Bales and Lashock, the County had met its burden of proof for obtaining an extension of G.T.H.'s commitment. The court reasoned that, while Bales relied "on a number of different reports and things, … his opinions were all his own," including "that there was a need for extension of commitment." The court went on to explain the following regarding dangerousness, which the court identified as the only disputed element:

> [T]here have been a number of incidents that were testified to that relate to dangerousness. The incident with his mother, which I agree that there was some dispute over what actually happened; the alleged hit-and-run; hitting the door; the fire; there was testimony about posturing and verbal aggression.… I will find that he is dangerous because of a substantial probability of physical harm to other individuals, as well as a substantial probability of

---

[4] I express no opinion about whether the County could have elicited the functional equivalent of any or all of the testimony that G.T.H. now challenges if the County had made different uses of potential sources of evidence, such as the reports of examiners. Instead, I reject the specific arguments that the County now makes based on the record of the hearing in this case.

On a related note, because Dr. Bales' report was not moved into evidence at the recommitment hearing, I do not consider its contents beyond what was testified to at the hearing. *See Outagamie Cnty. v. L.X.D.-O.*, 2023 WI App 17, ¶¶30, 35, 407 Wis. 2d 441, 991 N.W.2d 518; *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶7 n.4, 391 Wis. 2d 231, 942 N.W.2d 277 (recommitment examiner's report "was never admitted into evidence" and accordingly the examiner's testimony, as sole witness, was only evidence presented at hearing).

physical harm or injury to himself … due to impaired judgment.

¶18    Based on this reasoning, the circuit court issued an order extending G.T.H.'s commitment 12 months.[5]  G.T.H. appeals.

## DISCUSSION

¶19    G.T.H. argues that the circuit court erred in admitting the multiple instances of hearsay testimony offered by both Dr. Bales and Lashock. Specifically, G.T.H. points to testimony that he allegedly:  put his mother in fear by using a pillow; while driving, intentionally struck an occupied vehicle; set a fire in his sink; charged a door at the mental health hospital; and was verbally aggressive, also while at the hospital.

¶20    The County does not develop an argument based on an exception to the rule of evidence prohibiting the admission of hearsay.  Instead, it argues that this testimony was admissible either because it was not offered for its truth or because it helped form the basis of an expert opinion.  In the alternative, the County contends that the rule barring hearsay does not apply to commitment extension proceedings, or at least does not apply in the circumstances here.  The County also argues that any error in admitting the testimony at issue was harmless. I reject each of these arguments.

¶21    The following legal standards regarding ch. 51 proceedings provide context for this challenge to evidentiary rulings.  As stated above, the County bore

---

[5] The extension of G.T.H.'s commitment expired in July 2023, although briefing in this appeal was not completed until June 23, 2023.  However, neither party suggests that this appeal is moot; it appears not to be moot, based on the reasoning in *Sauk County v. S.A.M.*, 2022 WI 46, 402 Wis. 2d 379, 975 N.W.2d 162.

the burden to prove by clear and convincing evidence that G.T.H. was mentally ill, a proper subject for treatment, and dangerous to himself or others under one of five statutory standards. WIS. STAT. § 51.20(1)(a)1.-2., (13)(g)3.

¶22 For initial commitments, each of the dangerousness standards requires the petitioner (here the County) to "identify recent acts or omissions demonstrating that the individual is a danger to himself or to others." *J.W.K.*, 386 Wis. 2d 672, ¶17; *see also* WIS. STAT. § 51.20(1)(a)2. For recommitments, however, the petitioner is not required to identify "recent" acts or omissions demonstrating dangerousness. Instead, the dangerousness requirement "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am). This provision "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19. However, "[t]he alternate avenue of showing dangerousness under [§ 51.20(1)](am) does not change the elements or quantum of proof required"— the County must still prove that the individual "is dangerous." *J.W.K.*, 386 Wis. 2d 672, ¶24 (emphasis omitted).

¶23 Given the nature of recommitment proceedings and the alternate evidentiary path provided by WIS. STAT. § 51.20(1)(am), this court has explained that: "Dangerousness in an extension proceeding can and often must be based on the individual's precommitment behavior, coupled with an expert's informed opinions and predictions (provided, of course, that there is a proper foundation for the latter)." *See Winnebago Cnty. v. S.H.*, 2020 WI App 46, ¶13, 393 Wis. 2d

511, 947 N.W.2d 761. "That foundation is generally best established by virtue of a history provided by the subject's regular treating physician, particularly where … evidence of dangerous postcommitment behavior is lacking." *Id.*, ¶13 n.6. Yet, significant to the analysis below, so far as the County shows, nothing about this particular legal context excuses the County from following the pertinent rules of evidence. *See* § 51.20(10)(c).

## I. Hearsay

¶24 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." WIS. STAT. § 908.01(3). Hearsay is inadmissible, unless an exception to the hearsay rule applies. WIS. STAT. § 908.02.[6] I review the circuit court's decision to admit hearsay under a discretionary standard. That decision is upheld as long as the court "examined the relevant facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process." *State v. Mayo*, 2007 WI 78, ¶31, 301 Wis. 2d 642, 734 N.W.2d 115.

¶25 The following additional background illustrates that Dr. Bales and Lashock relied on statements of out-of-court declarants in giving the testimony about alleged historical incidents that G.T.H. challenges.

---

[6] Professor Blinka explains that "[h]earsay's greatest defect is the … absence of [declarant] demeanor, oath, and cross-examination *at the time the statement was made*." BLINKA, 7 WIS. PRAC., WIS. EVIDENCE § 801.1 (4th ed.) (emphasis in original). At issue here is the admission and consideration by the fact finder of out-of-court statements without the opportunity to observe the demeanor of the declarant, place the declarant under oath, or provide an opportunity for cross-examination of the declarant.

¶26 As noted above, Dr. Bales testified that he did not have contact with G.T.H. in preparing to testify at the recommitment hearing and instead consulted records as collateral sources. Bales testified that, as part of G.T.H.'s 2020 commitment, G.T.H. "confirmed" "put[ing] his mother in fear." However, Bales did not suggest in his testimony that G.T.H. told Bales about any of the five alleged incidents challenged by G.T.H. More vaguely, Bales testified that G.T.H. had "put people in fear in various ways … various times over the last ten years." When asked if he had spoken "to any of these people that have claimed to have been in fear," Bales replied, without elaboration, "[n]ot this time." And as to some incidents, Bales expressly observed that his knowledge came from reports written by others. This included "extensive records" which "abundantly" "noted" that G.T.H. "gets threatening due to his manic psychotic state." Similarly, Bales testified that his knowledge of the alleged hitting of an occupied vehicle came from the deputy's 2022 statement of emergency detention and criminal charges that Bales had looked up using the online Wisconsin Circuit Court Access system.

¶27 Lashock's knowledge of incidents identified by G.T.H. was also based on the statements of out-of-court declarants. Regarding the pillow incident, Lashock testified to speaking with G.T.H.'s mother about it on the phone. Similar to Bales, Lashock's knowledge of the alleged hitting of an occupied vehicle came "based on the staffing and reviewing the case notes and the emergency detention paperwork." Lashock's knowledge of the alleged fire-in-the-sink incident was based on a phone conversation with a police officer. Lashock never spoke to G.T.H. about the allegations that he hit a vehicle or started a fire in a sink. Lashock testified that he relied on "hospital notes" created by unspecified authors regarding G.T.H. allegedly charging at a door and being verbally aggressive during his 2022 emergency detention.

11

¶28 In addition, the County concedes through silence on appeal that Bales and Lashock lacked firsthand knowledge of any incident identified by G.T.H. by failing to respond to his appellate arguments to this effect. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (failure to respond to appellant's argument can concede the issue).

¶29 Instead, the County argues that the testimony of Dr. Bales and Lashock regarding these past incidents was not offered for the truth of the matters asserted, but rather to provide context for other testimony showing that G.T.H. has a "revolving door" pattern of becoming dangerous when treatment is withdrawn.[7] Regarding Bales' testimony, the County specifically contends that his testimony regarding the alleged vehicle-collision incident was to help explain Bales' "opinion of how quickly decompensation [by G.T.H.] might occur if treatment [were] withdrawn," noting that Bales pointed out that the alleged incident took place within weeks of G.T.H.'s earlier commitment being "dismissed." But the County omits that Bales specifically linked the concept of G.T.H.'s decompensation with his dangerousness, and did so in substantial part based on Bales' apparent belief that the past behaviors that he noted from G.T.H.'s records

---

[7] This court has described the purpose of WIS. STAT. § 51.20(1)(am) to "'avoid the "revolving door" phenomena'"—

> "whereby there must be proof of a recent overt act to extend the commitment but because the patient was still under treatment, no overt acts occurred and the patient was released from treatment only to commit a dangerous act and be recommitted ... [in] a vicious circle of treatment, release, overt act, recommitment."

*Winnebago Cnty. v. S.H.*, 2020 WI App 46, ¶9, 393 Wis. 2d 511, 947 N.W.2d 761 (quoting *State v. W.R.B.*, 140 Wis. 2d 347, 351, 411 N.W.2d 142 (Ct. App. 1987)); *see also Waukesha Cnty. v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509.

demonstrated dangerousness. It is unclear how the County could have or intended to prove to the circuit court that any decompensation *actually occurred* except through alleged conduct by G.T.H. testified to by Bales but allegedly witnessed only by others who did not testify. *See S.H.*, 393 Wis. 2d 511, ¶13 & n.6 ("Dangerousness in an extension proceeding can and often must be based on the individual's precommitment behavior, coupled with an expert's informed opinions and predictions" provided that a foundation can be established for the latter.). In other words, when the hearsay is excised, Bales gave what amounted to hypothetical testimony: If, and only if, the secondhand accounts were accurate, then Bales' opinion regarding current dangerousness was established.

¶30 A similar problem undermines the County's assertion that aspects of Lashock's testimony challenged by G.T.H. as hearsay were not offered for the truth of the matters asserted. The County again begins from the reasonable premise that its goal was to prove a recurring pattern of G.T.H. becoming dangerous after his commitments expire, because under these circumstances he would allegedly cease taking his medications and decompensate. But as with Bales' testimony, the County fails to acknowledge that proof of G.T.H.'s alleged past actions actually showing decomposition is a necessary component to proving such a pattern.

¶31 The County contends that Lashock testified to firsthand knowledge as to when G.T.H. was or was not placed under a commitment or emergency detention. But this does not get the County where it needs to go on this issue. The mere occurrence of such past restrictions on G.T.H. are not sufficient to meet the County's burden in a recommitment hearing. *See S.H.*, 393 Wis. 2d 511, ¶17 ("reliance on assumptions concerning a recommitment at some unidentified point in the past, and conclusory opinions parroting the statutory language without

actually discussing dangerousness, are insufficient to prove dangerousness in an extension hearing").

¶32    Further, in light of the nature of the County's argument to the circuit court about how the challenged testimony should be weighed, whatever doubts might exist about the County's purpose in offering this testimony fall away. As G.T.H. notes, the County invited the court to rely on significant aspects of the challenged evidence for its truth. For example, the County argued that the alleged fire-in-the-sink incident demonstrated impaired judgment and that G.T.H. "put[] other people in danger" by "driving erratically while in this manic state," in an apparent reference to his allegedly hitting an occupied vehicle.

¶33    In sum, the testimony identified by G.T.H. was based on out-of-court statements offered for the truth of the matters asserted. No exception to the rule against admitting such hearsay was clearly articulated before the circuit court, and the County does not point to any applicable exception on appeal.[8] Accordingly, the circuit court erroneously exercised its discretion in admitting and considering hearsay evidence.

---

[8] The County quotes, without accompanying discussion, the following assertions by corporation counsel to the circuit court in favor of rejecting G.T.H.'s objection to Dr. Bales testifying regarding the contents of the examiners' reports from the 2022 emergency detention:

> those are the reports that were completed by court order, appointing both [examiners]. And they have a modicum of reliability, and obviously the [circuit court] would rely upon them in making [its] decision.

However, the County fails to provide a developed argument supported by legal authority demonstrating that the contents of any report alleging any incident identified by G.T.H. must fall within an exception to the rule against hearsay. To repeat, however, I do not address whether the County in this case could have taken different approaches that might have allowed for the admission of the evidence at issue in this appeal. *See supra*, n.4.

¶34     The County notes that under WIS. STAT. § 907.03 experts may rely on inadmissible facts or data in forming their opinions if "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."[9] *See also Vinicky v. Midland Mut. Cas. Ins. Co.*, 35 Wis. 2d 246, 254, 151 N.W.2d 77 (1967) ("[I]t is proper for a physician to make a diagnosis based in part upon medical evidence of which he has no personal knowledge but which he gleaned from the reports of others."). But, as G.T.H. alerted the circuit court in his motion in limine, while experts may rely on inadmissible evidence that includes hearsay in forming opinions, it remains that "the underlying evidence is still inadmissible." *See S.Y.*, 156 Wis. 2d at 328 (citing § 907.03); *see also State v. Weber*, 174 Wis. 2d 98, 108, 496 N.W.2d 762 (Ct. App. 1993) (opinion evidence may be based upon hearsay, but the underlying hearsay data may not be admitted unless it is otherwise admissible under a hearsay exception).

¶35     Thus, for example, in *S.Y.* the county petitioning for commitment relied on expert testimony regarding an act demonstrating dangerousness that the expert learned of exclusively by reading treatment records. *See S.Y.*, 156 Wis. 2d

---

[9] WISCONSIN STAT. § 907.03 provides in its entirety that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible may not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion or inference substantially outweighs their prejudicial effect.

at 327. Further, "the medical records were not authenticated at trial or offered into evidence," there was "no stated rationale for the trial court's decision" to overrule S.Y.'s hearsay objection, and the county on appeal failed "to identify any statutory or case law supporting its position." *Id.* at 327-28. Accordingly, this court held that it was an erroneous exercise of discretion to admit the testimony. *See id.* (further holding that the admission was harmless error).

¶36     G.T.H. does not dispute that the witnesses here were both experts and that their challenged testimony was based on records typically relied upon in their respective professional fields.[10] But this does not mean that the underlying allegations that they testified to constituted admissible evidence. Here, as in *S.Y.*, no treatment records were authenticated or introduced. Also as in *S.Y.*, the circuit court here offered no rationale in denying G.T.H.'s repeated hearsay objections.

¶37     The County also notes that its witnesses had the authority to review G.T.H.'s treatment records under WIS. STAT. § 51.30—the lengthy statute that addresses access to records in ch. 51 cases. But this does not explain on what basis the out-of-court statements contained within those records could be offered as admissible evidence at the hearing.

¶38     Turning to its alternative argument, the County briefly contends that the rule against hearsay does not apply in recommitment proceedings, but I reject this argument as undeveloped. The general rule is to the contrary: "Except as otherwise provided in [WIS. STAT. ch. 51], the rules of evidence" apply to recommitment proceedings. *See* WIS. STAT. § 51.20(10)(c). The County's more

---

[10] I assume without deciding that Lashock's challenged testimony counted as expert testimony.

16

specific suggestion is that the alternative path to proving dangerousness provided by § 51.20(1)(am) in some manner displaces the rule against hearsay to the extent § 51.20(1)(am) allows circuit courts to rely on "the subject individual's treatment record" instead of recent acts exhibiting dangerousness. The County merely asserts a conflict between the pertinent rules of evidence and § 51.20(1)(am), without analyzing any provision in detail. This argument is undeveloped.[11]

## II. Harmless Error

¶39    An erroneous exercise of discretion to admit evidence does not lead to a new trial unless the substantial rights of a party are affected. ***Martindale v. Ripp***, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698; ***S.Y.***, 162 Wis. 2d at 327-28 (concluding erroneous admission of hearsay through expert testimony was harmless); WIS. STAT. §§ 51.20(10)(c), 805.18(2), 901.03. "For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." ***Martindale***, 246 Wis. 2d 67, ¶32. A reasonable possibility is a possibility that is sufficient to undermine confidence in the outcome. ***Id.*** "The burden of proving no prejudice is on the beneficiary of the error," in this case the County. *See **State v. Dyess***, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985).

---

[11] Without attempting to delve further, I observe that the County's position appears to confuse (1) the ability of a circuit court to weigh as it deems appropriate, perhaps quite heavily, evidence of dangerousness established through treatment records (if the evidence is admissible) with (2) the requirement that those records be admitted according to the rules of evidence when, as here, an evidentiary objection has been made. Notably, ***S.Y.*** and its application of WIS. STAT. § 907.03 was decided after the passage of WIS. STAT. § 51.20(am), *see **State v. W.R.B.***, 140 Wis. 2d 347, 350-51, 411 N.W.2d 142 (Ct. App. 1987), and the analysis in ***S.Y.*** has been persuasively relied on by this court in the context of recommitment proceedings, ***Rusk County v. A.A.***, Nos. 2019AP839, 2020AP1580, unpublished slip op. ¶¶34-39 (WI App July 20, 2021), 2021WL4256189.

17

¶40 As identified by the County, the following factors "assist in determining whether an error is harmless":

> (1) the frequency of the error; (2) the importance of the erroneously admitted evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; (4) whether the erroneously admitted evidence duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the [County]'s case; and (7) the overall strength of the [County]'s case.

*See State v. Jorgensen*, 2008 WI 60, ¶23, 310 Wis. 2d 138, 754 N.W.2d 77.

¶41 Applying these factors here, I cannot conclude that the County has met its burden to show that the admission of hearsay testimony regarding allegedly dangerous acts of G.T.H. was harmless. Regarding the frequency of the error, G.T.H. repeatedly objected to instances of hearsay testimony in both Dr. Bales' and Lashock's testimony. Further, substantial portions of the testimony of each witness consisted of the references to past incidents about which the witnesses lacked firsthand knowledge.

¶42 Turning to the related factors of the importance of the hearsay and the nature and strength of the County's case, each cuts against a conclusion that the error was harmless. Testimony regarding the historical incidents or behaviors at issue all related to whether G.T.H. was dangerous by virtue of his being a proper subject for commitment if treatment were withdrawn, an issue on which the County bore the burden of proof. To repeat, without such evidence, it is unclear what the County would have relied on to meet this burden on current dangerousness besides the bare assertions of ultimate opinions by its witnesses. *See S.H.*, 393 Wis. 2d 511, ¶17. The County argues that it presented a "strong and relatively straightforward" case that G.T.H. presents the problem of a "revolving door" for mentally ill persons who repeatedly decompensate when their

commitments expire and they stop taking medications. As part of this argument, the County downplays the role played by testimony regarding historical incidents about which the witnesses had no firsthand knowledge. But the County fails to show how it could have proven this theory by clear and convincing evidence without having directed the circuit court to admissible evidence that these incidents occurred.

¶43 Related to this last point, and turning to two additional factors in the harmless error analysis, the County does not identify admissible evidence corroborating the hearsay testimony, nor does it point to admissible evidence tending to establish the historical revolving door pattern of dangerous behavior resulting after the expiration of commitment.

¶44 Regarding the last factor in the harmlessness analysis, the County notes that G.T.H. did not present evidence or witnesses, as he was free to do in putting the County to its proof. But in light of how the other factors consistently point toward concluding the error here was not harmless, this factor is not significant.

¶45 More generally, the County repeats many of its points regarding whether the hearsay evidence was admissible and, if admissible, could be relevant in a recommitment proceeding to prove dangerousness, but without explaining how these arguments relate to the applicable harmless error standards given my conclusion that the hearsay was erroneously admitted.

¶46 I note that the circuit court did not clearly base its decision on the premise that, when the court ignored all of the hearsay references, the County met its burden exclusively through Dr. Bales' ultimate opinion about current dangerousness. As noted above, it is true that in forming their opinions experts

may rely on information that would be hearsay if offered directly as evidence, and that circuit courts may give weight, perhaps very great weight, to reliably supported, credible expert opinions on ultimate issues. But here the court, in explaining its ruling, considered for their truth the historical incidents alleged solely through Bales' and Lashock's hearsay testimony. The court explicitly relied to a meaningful degree on the substance of the hearsay statements. Put differently, assuming without deciding that the court could have properly done so under these circumstances, the court did not isolate Bales' ultimate conclusion and suggest a ruling that, when the court put to the side the truth of the historical allegations, Bales' ultimate conclusion carried the County's burden on this issue. *See S.H.*, 393 Wis. 2d 511, ¶17 n.9 (distinguishing the facts in *S.H.* from separate ch. 51 case in which reversal of recommitment was proper because "there was no evidence of any dangerous behavior, pre or postcommitment, indicating current dangerousness" and this court was asked to "assume the dangerousness element from the fact of prior commitment orders").

¶47 In sum on the harmlessness issue, I conclude that the admission of the multiple, significant hearsay incidents and the circuit court's reliance on them undermines confidence in the result of the recommitment proceedings.

## CONCLUSION

¶48 For these reasons, the orders of the circuit court extending G.T.H.'s commitment and making him subject to involuntary medication and treatment are reversed.

*By the Court.*—Orders reversed.

20

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.