# IN the MATTER OF the CONDITION OF S.Y., Alleged To Be Mentally Ill: S.Y., Appellant,†

### v.

# EAU CLAIRE COUNTY, Respondent.

Court of Appeals

*No. 90-0074-FT. Submitted on briefs March 6, 1990.—Decided April 17, 1990.*

(Also reported in 457 N.W.2d 326.)

†Petition to review granted.

On behalf of the appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner,* assistant state public defender.

On behalf of the respondent, the cause was submitted on the brief of *Anne E. Brown,* assistant corporation counsel of Eau Claire.

Before CANE, P.J., LaRocque and Myse, JJ.

CANE, P.J. S.Y. appeals an amended judgment of commitment finding him to be mentally ill, dangerous and in need of treatment.[1] S.Y. conducted his own defense at the commitment hearing. On appeal, he argues that sec. 51.20(3), Stats., mandated he be provided with counsel despite his wishes; that his waiver of counsel was, in any event, not knowing, intelligent and voluntary; and that he was prejudiced by the absence of counsel. He also argues that the trial court erred by failing to uphold a hearsay objection. We conclude that S.Y. was entitled to represent himself under art. I, sec. 21, of the Wisconsin Constitution and that his waiver of right to counsel was valid. We also hold that the admission of the hearsay testimony, although error, was harmless. Accordingly, we affirm the trial court's judgment.

On September 7, 1989, Eau Claire County filed an application to extend S.Y.'s involuntary commitment. Prior to the September 26 pretrial hearing, S.Y. was assigned, and subsequently discharged, three different attorneys. At a preliminary hearing, S.Y. expressed a

---

[1] This is an expedited appeal under Rule 809.17. Because the issue is one of first impression, we converted this from a one-judge to a three-judge appeal on our own motion pursuant to sec. 809.41(3), Stats., by order dated April 10, 1990.

desire to represent himself. After discussing the situation with S.Y. and his latest attorney, the trial court determined that S.Y. had validly waived his right to representation by counsel. Consequently, the trial court allowed S.Y. to proceed without an attorney.

At trial, the county's experts testified that S.Y. was mentally ill, dangerous to himself and others, and was a proper subject for treatment. They pointed to S.Y.'s threatening and occasionally violent behavior, his hiding a knife in his quarters, and his difficulty in maintaining a voluntary treatment program. S.Y. testified that his condition had markedly improved since the time most of those incidents had occurred, and he discounted his dangerousness to himself or society. He also stressed that the burden of proof lay with the county. The jury found S.Y. mentally ill, dangerous and a proper subject for treatment, and the trial court extended his involuntary commitment.

Section 51.20(3) states that "the court shall assure that the subject individual is represented by adversary counsel." S.Y. initially argues that because this statute is couched in mandatory language, it was error for the trial court to allow him to represent himself.

██

"The Founders believed that self-representation was a basic right of a free people." *Faretta v. California,* 422 U.S. 806, 830 n.39 (1975). Article I, sec. 21(2), of the Wisconsin Constitution provides: "In any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an attorney of the suitor's choice." While case law interpreting this section is scarce, Black's Law Dictionary 1603 (rev. 4th ed. 1968), defines suitor as: "A party to a suit or action in court. In its ancient sense, 'suitor' meant one who was bound to attend the county court; also one who formed part of the

[suit]." S.Y. was a party to the action brought by the county, and we hold that he had a constitutional right to represent himself at the commitment hearing.[2]

Interpreting sec. 51.20(3), Stats., in light of art. I, sec. 21(2), we determine that it guarantees a right to counsel that may, however, be waived. If through a reasonable interpretation we can hold a statute constitutional, we will do so. *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 689, 239 N.W.2d 313, 332 (1976). While the term "shall" is normally mandatory, we will construe it as directory in order to preserve the intent of the statute. *Town of Nasewaupee v. City of Sturgeon Bay,* 146 Wis. 2d 492, 496–97, 431 N.W.2d 699, 701 (Ct. App. 1988). Our reading is that sec. 51.20(3) is intended to assure legal representation to individuals subject to involuntary commitment. However, it is not inconsistent with that goal to allow self-representation subject to a proper waiver of the right to counsel.[3]

We next turn our attention to whether S.Y. executed a valid waiver of his right to counsel. Our supreme court has mandated that the trial court conduct two

---

[2]SCR 11.02(1) additionally provides: "Every person of full age and sound mind may appear by attorney in every action or proceeding by or against the person in any court . . . or may prosecute or defend the action or proceeding in person." We interpret the phrase "sound mind" to be coextensive with a finding of competency to proceed pro se.

[3]Although we hold S.Y. had a constitutional right to proceed pro se if he validly waived his right to counsel, this does not prevent a trial court from appointing "standby" counsel, against the litigant's wishes, to take over should the court decide during trial the litigant is not competent to proceed pro se or should the litigant later regret his initial decision. *See Faretta,* 422 U.S. at 834 n.46.

inquiries. First, was the waiver "knowing, intelligent and voluntary." Second, was the litigant competent to proceed pro se. *Pickens v. State,* 96 Wis. 2d 549, 556, 292 N.W.2d 601, 605 (1980).[4] Although *Pickens* is a criminal case, we hold its rationale to be equally applicable to civil cases where a party is constitutionally or statutorily entitled to representation.[5] We address each consideration in turn.

In this case, the trial court found S.Y. had knowingly, intelligently, and voluntarily waived counsel.

> [I]n order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to proceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver will not be found.

*Id.* at 563–64, 292 N.W.2d at 609.

The record supports the trial court's ruling that S.Y. validly waived his right to counsel.

---

[4]This approach has been criticized by those who believe that the "knowing, intelligent and voluntary" waiver standard encompasses the latter test. *See, e.g., United States v. McDowell,* 814 F.2d 245, 250 (6th Cir. 1987).

[5]The county points out, in another context, that the due process requirements for a civil commitment are not constitutionally required to be identical with those granted in criminal proceedings. *See Addington v. Texas,* 441 U.S. 418, 428–29 (1979). However, we see no reason for differing standards on the waiver of counsel and, in any event, any less restrictive standard would not change the outcome of this case and should properly come from the legislature or our supreme court.

THE COURT: [T]here's been some confusion at least in my mind over the situation for you being represented by an attorney.

[S.Y.]: Well, you can't trust any public defender. All they do is play footsie with the DA. And my father has frozen my assets to hire [a] private attorney. So I understand my case very well. And I can present it in a proper manner. I've been through this before. And I understand the working and what is going on.

THE COURT: Have you had a jury trial before?

[S.Y.]: Yes.

THE COURT: Did you have a lawyer the other time?

[S.Y.]: Yes.

. . . ..

[S.Y.]: . . . I'm not—not going through the public defender and another medical opinion or any of that stuff again. I understand my case. The burden of proof is on the prosecution. They got to prove, not only that I'm mentally ill, that I'm dangerous also. And if they can't prove both of those, they can't commit me.

. . . ..

THE COURT: Did you want to have Mr. Hadcock represent you?

[S.Y.]: No way.

THE COURT: He's the last person.

[S.Y.]: No way.

THE COURT: All right, Mr. [S.Y.]. It appears to me that for purposes of determining whether or not you want to have an attorney represent you that you

are competent to make the decision that you've made. And I will permit you to represent yourself.

[S.Y.]: Thank you.

THE COURT: I want you to understand, however, that I'm going to apply the same rules to you that I apply to the prosecutor. And if something is objectionable, I'll sustain an objection. If I think you are acting improperly, I'll interfere and have to tell you so. So I expect you to follow the same rules that an attorney representing you would follow.

[S.Y.]: Well, I'm not going to be yelling or screaming or pacing up and down I can assure you that.

THE COURT: Okay.

This hearing transcript, as well as S.Y.'s written request for a jury trial, reveals he knew the county was requesting an extension of commitment; he knew the elements required to obtain an involuntary commitment and the applicable burden of proof; and he had been through a jury trial and knew he would have to follow the same rules as an attorney. S.Y. was aware of his right to counsel and chose to waive this right.

Having found a knowing, intelligent, and voluntary waiver, we turn to the issue of S.Y.'s competency to proceed pro se.

When a defendant expresses a desire to proceed *pro se,* the trial court should examine him on the record to determine not only whether his waiver of counsel is knowing and voluntary, but also to determine whether he possesses the minimal competence necessary to conduct his own defense. Factors to consider in making this second determination include the defendant's education, literacy, fluency in

324

> English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury. However, since *Faretta* indicates that persons of average ability and intelligence are entitled to represent themselves, a timely and proper request should be denied only where a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.

*Pickens,* 96 Wis. 2d at 568–69, 292 N.W.2d at 611. The record shows S.Y. had two years of college and is literate and fluent in English. The only significant issue is whether he possessed a "psychological disability which . . . significantly affect[ed] his ability to communicate a possible defense to the jury." *See id.* The record supports the trial court's determination that S.Y. was competent to represent himself.

We reject the idea that sec. 51.20(3), Stats., creates an irrebuttable presumption that every individual the government seeks to commit, or has committed, is incompetent to waive his or her right to an attorney. The right to proceed pro se is guaranteed in our state's constitution. Even if principles of equal protection do not mandate an individualized determination of competency before this right is denied, the statutes specifically state that involuntary commitment is not synonymous with incompetence. Section 51.59(1), Stats., provides: "No person is deemed incompetent to manage his or her affairs . . . or to exercise any other civil right solely by reason of his or her admission to a facility in accordance with this chapter or detention or commitment under this chapter." *See also State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 739, 416 N.W.2d 883, 895 (1987). There is some obvious tension between the trial court's finding

of competence and the jury's finding of mental illness.[6] However, ch. 51 clearly allows for these seemingly incongruous findings. Given this statutory mandate, we cannot presume S.Y.'s incompetence to waive his right to counsel and proceed pro se from the fact that he was found mentally ill.

At the preliminary hearing, S.Y. requested to proceed pro se because he distrusted the attorneys appointed by the public defender and believed that they were too closely associated with the district attorney's office and feared political and job-related repercussions if they staunchly defended him. The county argues that these motivations, however ill-founded, did not affect his competence to proceed. The record fails to disclose any truly bizarre statements by S.Y. that would raise a red flag to a reviewing appellate court. The fact that S.Y. disliked and distrusted his appointed lawyers does not necessarily make his decision to waive counsel less voluntary or his subsequent self-representation less competent. We defer to the trial court's finding that S.Y.'s misgivings about his appointed counsel were not indicative of incompetence.

The trial court ruled S.Y. was competent to proceed pro se prior to the trial itself. However, we note that at trial the county's experts acknowledged that S.Y. can perform well in a structured setting. The trial record demonstrates that S.Y. had knowledge of the applicable law and the ability to present his case. Although we believe S.Y. may have been better served by proceeding

---

[6]Section 51.01(13)(b), Stats., provides:

"Mental illness", for purposes of involuntary commitment, means a substantial disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life, but does not include alcoholism.

with counsel, that decision was not ours to make. S.Y. validly waived his right to representation by an attorney, and hindsight does not entitle him to a new commitment hearing.

Finally, we address S.Y.'s argument that the trial court erred by failing to sustain an objection to Dr. Paul Caillier's hearsay testimony. Caillier testified that, according to reports, S.Y. had committed an unprovoked assault on a female undergraduate student prior to his commitment. S.Y. objected that the testimony was hearsay and was overruled by the trial court.

Decisions on the admissibility of hearsay evidence are within the discretion of the trial court. *Badger Produce Co. v. Prelude Foods, Int'l,* 130 Wis. 2d 230, 235, 387 N.W.2d 98, 101 (Ct. App. 1986). We uphold a trial court's discretionary decision if the court "examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Appleton Post-Crescent v. Janssen,* 149 Wis. 2d 294, 302–03, 441 N.W.2d 255, 258 (Ct. App. 1989). After reviewing the testimony in question, we hold that it was inadmissible hearsay but that its admission was harmless.

Caillier had only limited personal contact with S.Y. His testimony was based almost completely on S.Y.'s medical records. However, the medical records were not authenticated at trial or offered into evidence. *See Chapnitsky v. McClone,* 20 Wis. 2d 453, 461, 122 N.W.2d 400, 404 (1963). Caillier's position as an expert witness does not allow him to introduce inadmissible hearsay evidence. While experts may rely on inadmissible evidence in forming opinions, sec. 907.03, Stats., the underlying evidence is still inadmissible. *See State v. Coogan,*

154 Wis. 2d 387, 453 N.W.2d 186 (Ct. App. 1990).[7] Because there was no stated rationale for the trial court's decision and because the county fails to identify any statutory or case law supporting its position on appeal, we hold that admitting the testimony was an abuse of discretion.

However, we also hold that admission of Caillier's hearsay testimony was harmless error. *See* sec. 901.03(1), Stats. S.Y. himself raised the assault issue while questioning the preceding witness, Dr. M.S. Taman.

> [S.Y.]: You also stated that I had beaten up a college girl in your report. Where did you hear about this? Beating up is pretty strong language to use. Were you a witness to this beating?
>
> DR. TAMAN: No.

It was S.Y. who initially brought this incident to the attention of the jury. While admitting Caillier's testimony concerning the assault was error, S.Y. pointed out that Caillier had not been present and knew of the event only through second- and third-hand reports. He also was able to communicate his version of the incident to the jury. Finally, the jury heard other evidence of S.Y.'s dangerousness. The error here was harmless.

*By the Court.*—Judgment affirmed.

---

[7]*But cf. Bagnowski v. Preway, Inc.,* 138 Wis. 2d 241, 405 N.W.2d 746 (Ct. App. 1986).