Ryan J. ENEA, a minor by his Guardian ad Litem Charles W. Jones, Robin R. Enea, and John J. Enea, Plaintiffs-Appellants,

MILWAUKEE PRINTING PRESSMEN AND ASSISTANTS' LOCAL No. 7 HEALTH PLAN, Subrogated-Plaintiff-Respondent,

v.

James G. LINN, M.D., St. Mary's Hospital of Milwaukee† and Wisconsin Patients Compensation Fund, Defendants-Respondents.

Court of Appeals

*No. 01–2781. Submitted on briefs May 7, 2002.—Decided June 18, 2002.*

2002 WI App 185

(Also reported in 650 N.W.2d 315.)

† Petition to review denied 9-26-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Charles W. Jones* of *Charles W. Jones & Associates*, Milwaukee.

On behalf of the defendants-respondents, James G. Linn, M.D.; St. Mary's Hospital of Milwaukee, and Wisconsin Patients Compensation Fund, the cause was submitted on the joint brief of *Donald K. Schott, Jeffrey O. Davis*, and *Cory L. Nettles* of *Quarles & Brady LLP*, Milwaukee; *James R. Gutglass* and *Sharon R. Long* of *Gutglass, Erickson, Bonville, Seibel & Falkner, S.C.*,

Milwaukee; and *Donald Peterson* and *Michael J. Wirth* of *Peterson, Johnson & Murray, S.C.*, Milwaukee.

On behalf of the subrogated plaintiff-respondent, Milwaukee Printing Pressmen and Assistants' Local No. 7 Health Plan, the cause was submitted on the brief of *Richard P. Carr* and *Sarah Ann Huck* of *Reinhart Boerner Van Deuren S.C.*, Milwaukee.

Before Fine, Schudson and Peterson, JJ.

¶ 1. FINE, J. Ryan J. Enea, a minor, and his parents, Robin R. Enea and John J. Enea, appeal from the trial court's order granting summary judgment in favor of James G. Linn, M.D., St. Mary's Hospital of Milwaukee, and the Wisconsin Patients Compensation Fund. The Eneas filed a medical malpractice claim against the defendants after Ryan was born with severe brain damage. The trial court concluded that the Eneas could not establish the element of causation because their expert, William L. Semler, M.D., an obstetrician/gynecologist, was not qualified to opine about Ryan's neurological injuries. The Eneas claim that the trial court erred because, while Dr. Semler was not qualified to make a neurological diagnosis, he *was* qualified to testify regarding the medical processes that caused Ryan's injuries. We agree, and reverse for further proceedings.[1]

---

[1] The Milwaukee Printing Pressmen and Assistants' Local No. 7 Health Plan and the State of Wisconsin Department of Health and Family Services were joined in this case as subrogated plaintiffs. The Health Plan filed a brief notifying this court that its interests are "aligned" with the Eneas and that it "does not oppose the Eneas' request that the Court reverse the circuit court's order for summary judgment." The Department submitted a letter notifying this court that it is not participat-

## I.

¶ 2. Mrs. Enea has a rare medical condition called didelphys uterus, or double uterus. Pregnant women with didelphys uterus have a high risk of premature labor and an abnormal presentation.

¶ 3. When Mrs. Enea was pregnant with Ryan, her membranes ruptured prematurely at thirty-three weeks. Mrs. Enea called her obstetrician, James G. Linn, M.D. The switchboard operator at St. Mary's Hospital told Mrs. Enea that Dr. Linn was not available but that the operator would page him. When Mrs. Enea did not hear from Dr. Linn, she went to St. Mary's Hospital.

¶ 4. Dr. Linn alleges that he was not present for labor and delivery because a resident called him at home and told him that "Mrs. Enea was not in labor, that she was uncomfortable[,] and that the fetal heart rate was normal." Dr. Linn contends that he told the resident that he was unavailable, that he would call back in "a couple of hours," and that "if there was any problem the resident" should call the on-call physician.

¶ 5. In the delivery room, Nancy Grant, M.D., a third-year resident, evaluated Mrs. Enea's condition. Dr. Grant decided to perform an emergency cesarean section, but changed her mind when an examination revealed that Mrs. Enea was fully dilated. Ryan was born shortly thereafter.

¶ 6. Ryan was not breathing when he was born. The attending personnel administered CPR to resuscitate Ryan. According to the hospital records, resuscitation was "very prolonged" and included bagging with a

---

ing in the appeal and requesting that we remove the respondent designation from the caption. No party has objected. We therefore amend the caption to remove the respondent designation.

mask and oxygen, chest compressions, intubation, epinephrine, sodium bicarbonate, and albumin administered through an umbilical vein catheter. Additionally, a neonatologist estimated that Ryan lost "at least" one-third of his blood volume. Ryan has serious brain damage.

¶ 7. The Eneas filed a medical malpractice suit, alleging that Dr. Linn and St. Mary's Hospital were negligent in caring for and treating Mrs. Enea and Ryan. Specifically, the Eneas claimed that the defendants were negligent because they failed to perform a cesarean section and that if they had performed a cesarean section, sufficient blood-enriched oxygen would have reached Ryan's brain.

¶ 8. The defendants subsequently filed a motion to dismiss on the ground that the Eneas violated the trial court's scheduling order. The trial court found that the Eneas' first attorney had committed an "egregious" violation when he failed to name witnesses, itemize damages, and provide a special permanency report. As a sanction, the trial court limited the Eneas to one expert witness, William L. Semler, M.D., an obstetrician/gynecologist, on the issue of causation.

¶ 9. The defendants deposed Dr. Semler. Dr. Semler testified that Ryan was injured because: "[t]he baby's blood was squeezed out into the placenta because of the tetanic-like contractions. So the baby was born without much blood in its system; therefore, it did not feed its brain." Dr. Semler also opined that the "tetanic-like contractions . . . could have been prevented with anesthesia and the baby delivered by C-section."[2] Dr.

---

[2] "Tetany" is "[a]n abnormal condition characterized by periodic painful muscular spasms and tremors." AMERICAN HERITAGE DICTIONARY 1855 (3d ed. 1992).

Semler testified that he formed this opinion after reviewing the report of Stephen Ragatz, M.D., a neonatologist. Dr. Semler admitted that a neonatologist or a neurologist diagnoses neurological injuries; Dr. Semler opined that he could not, to a reasonable degree of medical certainty, determine the timing of when Ryan suffered significant brain injury because, as he explained, "I'm not a neonatologist or a neuropathologist, so I wouldn't know what they've come up with as far as the timing."

¶ 10. The defendants sought summary judgment based on Dr. Semler's testimony. They claimed that the Eneas could not prove the elements of a medical malpractice claim because Dr. Semler was not qualified to testify why Ryan was injured. The trial court granted summary judgment, concluding that the Eneas could not establish the element of causation because "we need some expert testimony about" neurological injuries and "the record is clear to me that obstetricians do not diagnose or treat neurological injuries."

II.

¶ 11. Our review of the trial court's grant of summary judgment is *de novo,* and we apply the same standards as did the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). First, we examine the pleadings to determine whether a proper claim for relief has been stated. *Id.*, 136 Wis. 2d at 315, 401 N.W.2d at 820. If the complaint states a claim and the answer joins the issue, our inquiry then turns to whether any genuine issues of material fact exist. *Id.* Wisconsin Stat. Rule 802.08(2) sets forth the standard by which summary judgment motions are to be judged:

The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

¶ 12.   The Eneas argue that summary judgment was improper because Dr. Semler was qualified to testify about the cause of Ryan's injury. They claim that it was proper for Dr. Semler to rely on the medical records and reports of other experts to reach the conclusion that a cesarean section would have prevented Ryan's injuries and that "[t]he trial court's findings rest on the faulty premise that since obstetricians do not typically make a neurological diagnosis in a clinical setting, an obstetrician will not be allowed to testify as to what medical practice caused Ryan Enea's injuries." We agree.

¶ 13.   A witness qualifies as an expert "by knowledge, skill, experience, training, or education." WIS. STAT. RULE 907.02.[3] Whether a witness is qualified to render an expert opinion is within the trial court's discretion. *State v. Watson*, 227 Wis. 2d 167, 186, 595 N.W.2d 403, 412 (1999). We will affirm a discretionary determination if it appears from the record that the trial court:   (1) examined the relevant facts; (2) applied a proper standard of law; and (3) using a demonstrative

---

[3] WISCONSIN STAT. RULE 907.02 provides:

**Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–415, 320 N.W.2d 175, 184 (1982).

¶ 14.   Here, the trial court erroneously confused the issue of the diagnosis of Ryan's neurological injuries with the issue of the cause of those injuries. Thus, for the reasons set forth below, we agree that although Dr. Semler was not qualified to diagnose Ryan's neurological injuries, Dr. Semler *was* qualified to testify about the *cause* of what the neonatologist identified as Ryan's neurological damage.

¶ 15.   First, expert testimony was not necessary to establish the simple fact that Ryan was injured. A detailed ultrasound of Ryan at seventeen weeks was "normal." Ryan now has severe brain damage—Ryan's mother testified at her deposition that Ryan: (1) does not have a suck, gag, or swallow reflex and, that as a result, he will need to be fed by tube for the rest of his life; (2) cannot hold himself up well; and (3) suffers from respiratory problems and requires oxygen support "most of the time." It is thus readily apparent to even the most medically inexperienced juror that Ryan is severely injured. Accordingly, expert testimony is not required to prove that Ryan is damaged. *See State v. Whitaker*, 167 Wis. 2d 247, 255, 481 N.W.2d 649, 652 (Ct. App. 1992) (expert testimony is required only if the issue to be decided is beyond the general knowledge and experience of the average juror).

¶ 16.   Second, it was proper for Dr. Semler to rely on the reports of other medical experts to form an opinion on the cause of Ryan's neurological injuries. "The standard in this state for the admission of expert testimony is not stringent." *Martindale v. Ripp*, 2001

WI 113, ¶ 68, 246 Wis. 2d 67, 629 N.W.2d 698. An expert witness, who is sufficiently qualified under WIS. STAT. RULE 907.02, may rely on evidence that is not admissible "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See* WIS. STAT. RULE 907.03.[4] Specifically, medical experts may rely on the reports and medical records of others in forming opinions that are within the scope of their own expertise. *See State v. Cadden*, 56 Wis. 2d 320, 326, 201 N.W.2d 773, 775 (1972) ("[S]ince in their daily practice physicians normally rely on the facts and opinions of other experts, courtroom testimony, when based on the medical observations and findings of others, is sufficiently reliable to permit medical conclusions.").

¶ 17.  According to Dr. Semler's deposition testimony, the report of Dr. Ragatz, a neonatologist, indicated that "[the tetanic-like contractions are] the etiology for the fact that the patient did have an exchange transfusion, where the blood is squeezed out of the baby back into the blood vessels of the placenta." This report was inadmissible, however, because the trial court excluded it as a sanction. But, as we have seen, Dr. Semler can rely on Dr. Ragatz's report in forming his, Dr. Semler's, opinion as to the *cause* of Ryan's injuries, as those injuries were diagnosed by Dr. Ragatz, because

---

[4] WISCONSIN STAT. RULE 907.03 provides:

**Bases of opinion testimony by experts.** The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

the precise nature of those injuries was not material—Ryan was profoundly injured as any lay person could see.

¶ 18. Dr. Semler considered Dr. Ragatz's report and testified that damage occurred to Ryan in utero: "The baby's blood was squeezed out into the placenta because of the tetanic-like contractions. So the baby was born without much blood in its system; therefore, it did not feed its brain." Dr. Semler also testified that although he could not, based on his own expertise, testify about the exact nature and extent of Ryan's injury, he could determine to a reasonable degree of medical certainty that Ryan's injuries were caused by the failure to perform a cesarean section: "[Ryan] suffered in utero because of the tetanic-like contractions, which could have been prevented with anesthesia and the baby delivered by C-section." This testimony was proper. Thus, the trial court erred when it granted summary judgment. Accordingly, we reverse and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.