COURT OF APPEALS
DECISION
DATED AND FILED

September 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP460**

STATE OF WISCONSIN

Cir. Ct. No. 2022ME318

IN COURT OF APPEALS
DISTRICT II

---

IN THE MATTER OF THE MENTAL COMMITMENT OF D.E.S.:

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

D.E.S.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Winnebago County: TERESA S. BASILIERE, Judge. *Reversed.*

¶1    NEUBAUER, J.[1] D.E.S., referred to herein by the pseudonym Dennis, appeals from orders extending his involuntary commitment under WIS. STAT. § 51.20 by twelve months and continuing involuntary medication and treatment during that time.  Dennis argues that the circuit court improperly relied on hearsay in determining that he was dangerous and that when that evidence is disregarded, the record lacks sufficient evidence to support the orders.  Dennis also argues that admission of the hearsay was not harmless.  This court agrees and thus reverses the orders.

## BACKGROUND

¶2    To provide context for the facts underlying the extension of Dennis's commitment, this court begins by briefly discussing the legal standards governing such extensions under WIS. STAT. ch. 51.[2]  An individual may be committed involuntarily if the petitioner proves by clear and convincing evidence that the individual is mentally ill, a proper subject for treatment, and dangerous.  WIS. STAT. § 51.20(1)(a), 13(e).  Section 51.20 sets forth five standards under which an individual may be found dangerous, all of which require proof of "recent acts, omissions, or behavior."  *Sauk County v. S.A.M.*, 2022 WI 46, ¶5, 402 Wis. 2d 379, 975 N.W.2d 162; *see also* § 51.20(1)(a)2.a.-e.

¶3    To extend a commitment, the petitioner must establish the same three elements—mental illness, suitability for treatment, and dangerousness.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court uses the terms "recommitment" and "extension" of a commitment interchangeably.  *See Portage County v. J.W.K.*, 2019 WI 54, ¶1 n.1, 386 Wis. 2d 672, 927 N.W.2d 509.

*Langlade County v. D.J.W.*, 2020 WI 41, ¶31, 391 Wis. 2d 231, 942 N.W.2d 277. But an individual who has been involuntarily committed and treated immediately before extension proceedings "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior." *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. Thus, WIS. STAT. § 51.20 "provides a different avenue for proving dangerousness": in lieu of recent acts or behavior, the petitioner may establish dangerousness by proving "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." *J.W.K.*, 386 Wis. 2d 672, ¶19 (first quotation); § 51.20(1)(am) (second quotation). However, "[t]he alternate avenue of showing dangerousness under paragraph (am) does not change the elements or quantum of proof required"—the County must still prove that the individual is dangerous because one of the five criteria for commitment under § 51.20(1)(a)2.a.-e would recur if treatment were withdrawn. *J.W.K.*, 386 Wis. 2d 672, ¶24 (emphasis omitted).

¶4 A petition to extend an involuntary commitment must be supported by a written evaluation of the individual that sets forth the examiner's opinion on whether the individual meets the criteria for continued commitment. *See* WIS. STAT. § 51.20(13)(g)2r. If a circuit court concludes that sufficient evidence supports recommitment, it must "make specific factual findings with reference to [the standard(s) under] § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶40. With this background in mind, this court turns to the facts.

¶5 In September 2022, Winnebago County (the County) filed a petition to extend Dennis's involuntary commitment along with a report from Dr. Odette

Anderson, a psychiatrist at the Mendota Mental Health Institute who had treated Dennis for the last five years. In the petition, the County invoked WIS. STAT. § 51.20(1)(am), alleging that Dennis was dangerous "because there is a substantial likelihood, based on [his] treatment record, that [he] would be a proper subject for commitment if treatment is withdrawn." The County asserted further that Dennis was mentally ill, a proper candidate for treatment, and dangerous under the second, third, fourth, and fifth standards in § 51.20(1)(a)2.b.-e.

¶6 The circuit court held a hearing on the County's petition on October 6, 2022. Anderson, the County's only witness, testified about the recommitment criteria based on her treatment of Dennis and review of his treatment records. Because Dennis does not dispute that he is mentally ill and a proper candidate for treatment, the following discussion of Anderson's testimony focuses on the third recommitment criteria—dangerousness.

¶7 The County focused on the fifth standard for establishing dangerousness, WIS. STAT. § 51.20(1)(a)2.e., which "addresses dangerousness arising from an inability to understand the advantages and disadvantages of a particular medication or treatment." *See Dane County v. Kelly M.*, 2011 WI App 69, ¶8, 333 Wis. 2d 719, 798 N.W.2d 697. The County asked Anderson questions about whether Dennis satisfied the requirements in that standard.

¶8 Anderson confirmed that she had explained to Dennis the advantages, disadvantages, and alternatives to treatment but that he could not express an understanding of them. She testified that Dennis's mental illness rendered him incompetent to make decisions regarding medication or treatment.

¶9 Anderson also agreed that Dennis had "demonstrated a substantial probability that he needs care or treatment to prevent further disability or

4

deterioration." When asked if anything in Dennis's treatment history supported that point, Anderson explained that he had displayed increased "psychotic symptoms," "mood symptoms," "agitation and irritability," and "threatening and dangerous behavior" when he stopped taking his medication several months earlier. The County asked about examples of his dangerous behavior and Anderson began to recount an incident documented in Dennis's treatment records that occurred on May 10, 2022. Anderson stated that she had not personally witnessed that incident, at which point Dennis's counsel objected to the testimony as hearsay. The circuit court overruled the objection, stating that the incident was "part of the medical records, and it's referenced as a specific incident."[3] The court also declined Dennis's request for a standing hearsay objection. Anderson then testified that

> per the records, the patient was out at the courtyard and had urinated his pants. Then he accused staff members of putting tubes in his pants. He started yelling loudly and demanding that sweats be given to him.
>
> ….
>
> The patient shoved the staff into the linen room and tried to shut the door on him. And then went charging after another staff member, posturing at that staff member.

¶10 Anderson identified several other deficiencies that, in her view, evidenced a substantial probability that Dennis needed further care or treatment to avoid further deterioration, including his inability to keep track of the date and time of day, understand why he was confined, or recall his diagnosed mental

---

[3] According to the hearing transcript, the circuit court said the incident "isn't" in Dennis's treatment records. The parties agree this was likely a misstatement by the court or a typographical error in the transcript.

illness. She agreed that Dennis had shown a substantial probability that he would be unable to provide for his own health and safety if left untreated.

¶11 Anderson also agreed that Dennis had shown a substantial probability that he would suffer "severe mental, emotional, or physical harm, resulting in the loss of his ability to function independently" if left untreated. When asked to "expound upon that," Anderson noted, among other things, that Dennis was not able to voluntarily take the medications prescribed for him. The County then asked Anderson if she had seen instances of medication noncompliance during her treatment of Dennis and she responded as follows:

> I have limited access to that. But this is information that is in the records, which is our standard means of communicating with one another within the institute. But by my review of the records and discussion with other physicians and other staff members throughout the institute, yes, we have seen where, if [Dennis] is not taking prescribed medication, he will become violent, he will become more violent, he will become more disoriented, he will become more psychotic, have more difficulty distinguishing what is real from what is not real, his mood will become more unstable, he will become more agitated, more irritable.

Dennis's counsel again objected on hearsay grounds. In response, the County "ask[ed] that this be subjected to the hearsay exception for medical purposes." The circuit court overruled the objection, stating that "the standard here is the substantial likelihood, based on the subject's individual treatment records…. So it's reasonable for the physician to rely upon that and testify on that."

¶12 Anderson did not believe that Dennis would avail himself of reasonable treatment options in the community because he did not believe he had a mental illness and lacked "the insight to see that he would need that kind of treatment." In responding to a question about what she would need to see in order

to change her recommendation regarding Dennis's commitment in the future, Anderson said that she

> believe[d] that each year for the last several years he typically has about two to three episodes of physical aggression, which this is improved compared to if he were not taking medication, but at the same time, I would like to see that number much lower before I would have a different type of recommendation.

¶13    Finally, the County asked Anderson about the path to establish dangerousness under WIS. STAT. § 51.20(1)(am).  She agreed that if Dennis's treatment were to be withdrawn, he would become a proper candidate for commitment.  The County did not move to admit Anderson's report or any of Dennis's treatment records into evidence.

¶14    Dennis testified after Anderson and apologized "if [he] caused any problems back in MHI between staff, inmates, and stuff like that, likewise."  But he did not specifically reference the May 2022 shoving incident or acknowledge committing any other violent act or threat.  In her closing argument, Dennis's counsel again emphasized that Anderson's testimony about the May 2022 incident was hearsay and that the court had heard no "firsthand testimony about" any recent acts or omissions showing that Dennis was dangerous.

¶15    The circuit court concluded that the County had met its burden of proving grounds to extend Dennis's commitment.  The court did not determine Dennis to be dangerous under the fifth standard; instead, it referred to the second standard, stating that Dennis was dangerous "because [he] evidences a substantial probability of physical harm to other individuals, based upon the incident that was testified to, where there was a shoving of a staff member."  *See* WIS. STAT. § 51.20(1)(a)2.b.  The court also referenced the standard in § 51.20(1)(am) and

7

concluded "that there is a substantial likelihood, based upon [Dennis]'s individual treatment record, that he would be a proper subject for commitment if treatment were withdrawn." At the end of the court's remarks, the County asked for clarification as to whether the court was relying on the second or fifth standard "or something else" for dangerousness. In response, the court again referred to the standard in § 51.20(1)(am).

¶16 After the hearing, the circuit court entered orders extending Dennis's commitment for twelve months and allowing involuntary medication and treatment during that time.[4] The commitment order states that the court determined Dennis to be dangerous under the second, third, and fourth standards, as evidenced by both (1) "a recent overt act, attempt or threat to act under [WIS. STAT.] § 51.20(1)(a)2.a. or b." and (2) "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."

## DISCUSSION

¶17 Dennis's appeal focuses on the circuit court's admission of testimony that he contends was inadmissible hearsay. This court reviews that issue under the deferential erroneous exercise of discretion standard. *Morden v. Continental AG*, 2000 WI 51, ¶81, 235 Wis. 2d 325, 611 N.W.2d 659. Under that standard, the circuit court's decision will not be disturbed so long as the court "examined the relevant facts, applied a proper standard of law, used a

---

[4] The circuit court entered three extension orders: (1) an initial order dated October 6, 2022; (2) a second order dated October 7, 2022; and (3) an amended order dated October 10, 2022. Dennis appeals from the amended order.

demonstrated rational process, and reached a conclusion that a reasonable judge could reach." ***State v. Abbott Lab'ys***, 2013 WI App 31, ¶31, 346 Wis. 2d 565, 829 N.W.2d 753 (citation omitted).

¶18 Dennis also challenges the sufficiency of the evidence presented to establish grounds for recommitment, specifically the element of dangerousness. "A determination of dangerousness is not a factual determination, but a legal one based on underlying facts." ***D.J.W.***, 391 Wis. 2d 231, ¶47. Whether the County met its burden to prove Dennis dangerous is an issue this court reviews de novo. *See* ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶39, 349 Wis. 2d 148, 833 N.W.2d 607.

¶19 Before addressing these issues, it is important to identify the grounds upon which the circuit court found Dennis to be dangerous. At the recommitment hearing, the County sought to establish dangerousness under the fifth standard, WIS. STAT. § 51.20(1)(a)2.e. But the court cited the second standard in its oral ruling, and the extension order indicates the court determined Dennis to be dangerous under the second, third, and fourth standards, § 51.20(1)(a)2.b.-d. Under the second standard, an individual is dangerous if he

> [e]vidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

Sec. 51.20(1)(a)2.b. The court's remarks and the commitment order make clear that the court determined Dennis to be dangerous under this standard because of a recent overt act (the May 2022 shoving incident) and under the "treatment record" option in § 51.20(1)(am).

## I. Hearsay

¶20 Dennis argues that the only evidence of an overt act or his treatment record that could support a determination of dangerousness was Anderson's hearsay testimony. Wisconsin's rules of evidence apply in recommitment hearings "[e]xcept as otherwise provided" in WIS. STAT. ch. 51. WIS. STAT. § 51.20(10)(c), (13)(g)3. WISCONSIN STAT. § 908.01(3) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible unless its proponent shows that an exception applies. WIS. STAT. § 908.02; *State v. Peters*, 166 Wis. 2d 168, 174, 479 N.W.2d 198 (Ct. App. 1991) (stating that "it is the proponent's burden to prove that the evidence fits into a specific exception to the hearsay rule").

¶21 Anderson's testimony about the May 2022 incident falls within the statutory definition of hearsay. Anderson did not have firsthand knowledge of the incident because she "was not personally present" to witness it. Instead, she relayed the description of the incident contained in Dennis's treatment records. In finding Dennis dangerous under the second standard, the circuit court specifically cited "the incident that was testified to, where there was a shoving of a staff member." Thus, the court necessarily relied on Anderson's testimony about the contents of the records "to prove the truth of the matter asserted"—that is, that the incident actually occurred. *See* WIS. STAT. § 908.01(3).

¶22 Anderson's testimony regarding references to Dennis's increasingly violent and aggressive behavior in his treatment records also constituted hearsay. Anderson acknowledged having "limited access" when asked if she had seen Dennis's condition deteriorate in the past when he was not taking medication.

Given her testimony that followed, it is apparent that "limited access" meant lack of personal knowledge. Anderson then testified, based on "information that is in the records" and "discussion with other physicians and other staff members," that Dennis had become "more violent," "more disoriented," and "more psychotic" in the past when not taking his medication. This testimony relayed out-of-court statements contained in the treatment records or provided by other staff members, which the circuit court necessarily accepted as true in finding Dennis dangerous under WIS. STAT. § 51.20(1)(am).

¶23    The County does not contend that any exception to the hearsay rule applies to Anderson's testimony. Instead, it argues that examiners in recommitment proceedings are permitted to base their opinions on treatment records, *see* WIS. STAT. §§ 51.20(9)(a)5. and 907.03, and that Anderson's testimony was not offered for its truth, but rather to establish the basis for her opinion that Dennis was dangerous. The County highlights Anderson's role as Dennis's treating physician for five years before the hearing and her acknowledgement that she consulted his treatment records when forming her opinions. It argues that Anderson's reliance on Dennis's records was "reasonable," that she did not simply repeat "the hearsay opinions of others," and that she relied on other nonhearsay—her years of treating Dennis and interactions with him—in forming her opinions.

¶24    The County is correct that expert witnesses may rely on inadmissible evidence in forming their opinions, so long as the evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See* WIS. STAT. § 907.03. This court has previously recognized that "medical experts may rely on the reports and medical records of others in forming opinions that are within the scope of their own expertise."

11

*Enea v. Linn*, 2002 WI App 185, ¶16, 256 Wis. 2d 714, 650 N.W.2d 315; *see also* *Walworth County v. Therese B.*, 2003 WI App 223, ¶17, 267 Wis. 2d 310, 671 N.W.2d 377 ("In the medical field, the evidence contained in treatment records is routinely relied upon by physicians to treat a patient; if it is deemed trustworthy enough to support treatment decisions, it is trustworthy enough to support a professional opinion."). Consistent with that well-established practice, Anderson could rely on information Dennis's treatment records and information obtained from other physicians and staff members in forming her opinions.

¶25 Expert reliance on such evidence is subject to important limitations, however. For one, such reliance "does not transform the hearsay into admissible evidence." *Therese B.*, 267 Wis. 2d 310, ¶8. WISCONSIN STAT. § 907.03 does not allow an expert to serve "as a conduit for the hearsay opinions of others." *Therese B.*, 267 Wis. 2d 310, ¶9. Hearsay upon which an expert relies may only be admitted as substantive evidence if it fits within an exception to the hearsay rule. *State v. Weber*, 174 Wis. 2d 98, 107, 496 N.W.2d 762 (Ct. App. 1993).[5]

¶26 The County did not lay a proper foundation for the admission of the hearsay as substantive evidence. The County did not establish that any exception

---

[5] WISCONSIN STAT. § 907.03 allows the inadmissible evidence upon which an expert relies to be "disclosed to the jury [if] the court determines that [its] probative value in assisting the jury to evaluate the expert's opinion or inference substantially outweighs [its] prejudicial effect." But even if a court determines the probative value substantially outweighs the prejudicial effect, the evidence is admissible only to assist the jury in evaluating the expert's opinion, not as substantive evidence. *See State v. Heine*, 2014 WI App 32, ¶14, 354 Wis. 2d 1, 844 N.W.2d 409.

to the hearsay rule applied.[6]  Nor did it authenticate or attempt to introduce any of the records upon which Anderson relied.  In addition, the County did not call any witness with firsthand knowledge of the May 2022 incident or any of the staff members with whom Anderson spoke.   And it did not seek to introduce Anderson's report, which precluded the circuit court from considering its contents beyond what was testified to at the hearing.  *See **Outagamie County v. L.X.D.-O.***, 2023 WI App 17, ¶36, 407 Wis. 2d 441, 991 N.W.2d 518 (holding that "in a recommitment hearing … an examiner's report must be received into evidence to be considered by the circuit court").[7]

¶27     Moreover, as explained above, it is apparent that the circuit court went beyond considering Anderson's testimony merely as a basis for her opinions and instead relied on the truth of the specific statements she made in determining Dennis to be dangerous.   The court specifically determined Dennis to be dangerous under the second standard based on the truth of Anderson's statement that his treatment records showed that he shoved a staff member in May 2022.  And it determined Dennis to be dangerous under the recommitment standard in WIS. STAT. § 51.20(1)(am) based on information Anderson relayed from Dennis's

---

[6] In response to one of Dennis's objections, the County cited "the hearsay exception for medical purposes."  This appears to be a reference to WIS. STAT. § 908.03(4), which creates an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."  The circuit court did not admit Anderson's testimony under this exception and the County does not argue on appeal that her testimony was admissible under this exception.

[7] This court expresses no opinion about whether the County could have elicited the functional equivalent of the testimony that Dennis challenges if the County had introduced other evidence, such as Anderson's report, Dennis's treatment records, or evidence and findings from prior commitment hearings.  Instead, this court limits its analysis to the specific arguments made by the County based on the evidence presented at the recommitment hearing.

records and other staff members about prior instances in which he became more violent and psychotic after not taking medication. Though Anderson could rely on inadmissible evidence in forming her opinions, the court could not admit and "rely[] on the substance of the inadmissible hearsay" in determining Dennis to be dangerous. *See State v. Kleser*, 2010 WI 88, ¶¶90-92 & n.9, 328 Wis. 2d 42, 786 N.W.2d 144 (holding that circuit court erred in determining seriousness of offense in juvenile waiver proceeding "based on the purported 'facts' of the offense" as described by doctor who lacked personal knowledge of them).

¶28    This court has repeatedly held that such use of hearsay testimony in a commitment hearing constitutes an erroneous exercise of discretion. For example, in *S.Y. v. Eau Claire County*, 156 Wis. 2d 317, 457 N.W.2d 326 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 320, 469 N.W.2d 836 (1991),[8] a doctor who "had only limited personal contact with S.Y." and relied "almost completely" on his medical records "testified that, according to reports, S.Y. had committed an unprovoked assault … prior to his commitment." *Id.* at 327. This court held that the testimony was hearsay which the circuit court had erroneously exercised its discretion in admitting. *Id.* at 328.[9]

---

[8] In *S.Y. v. Eau Claire County*, 162 Wis. 2d 320, 469 N.W.2d 836 (1991), the supreme court affirmed the court of appeals' decision, concluding that it did not have to determine whether the circuit court had erred in admitting the hearsay because "[i]f its admission were error, it was harmless." *Id.* at 339.

[9] Though Anderson appears to have had more personal interaction with Dennis in her five years as his treating psychiatrist than the doctor in *S.Y. v. Eau Claire County*, 156 Wis. 2d 317, 457 N.W.2d 326 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 320, 469 N.W.2d 836 (1991), this does not materially distinguish *S.Y.* from the present case because Anderson made clear in her testimony that she did not have personal knowledge of the incidents that supported her opinions.

¶29     More recently, in ***Rusk County v. A.A.***, Nos. 2019AP839 and 2020AP1580, unpublished slip op. (WI App July 20, 2021), *review denied* (WI Oct. 18, 2021) (Nos. 2019AP839 and 2020AP1580),[10] a psychiatrist testified that A.A. was dangerous under WIS. STAT. § 51.20(1)(am) "based on 'events' described in [his] medical records." ***A.A.***, Nos. 2019AP839 and 2020AP1580, ¶35.  Over A.A.'s objection, the circuit court allowed the psychiatrist to testify as to the events, about which the psychiatrist had no personal knowledge. ***Id.***, ¶¶35-36.  Citing ***S.Y.***, this court ruled that the circuit court had erroneously exercised its discretion in allowing the testimony. ***A.A.***, Nos. 2019AP839 and 2020AP1580, ¶¶37-39.  Though the events served as the basis for the psychiatrist's opinion, the county did not introduce the medical records or call a witness with personal knowledge of the events. ***A.A.***, Nos. 2019AP839 and 2020AP1580, ¶¶37-39. ***A.A.*** is squarely on point with the present case in this respect. *See also* ***Kenosha County v. L.A.T.***, No. 2022AP1730, unpublished slip op. ¶¶25, 28, 31 (WI App Aug. 23, 2023) (concluding that psychiatrist's testimony about incidents relied on by circuit court in finding committee dangerous was inadmissible hearsay because psychiatrist obtained information about incidents from collateral sources); ***Waupaca County v. G.T.H.***, No. 2022AP2146, unpublished slip op. ¶¶26-33 (WI App Aug. 24, 2023) (holding that circuit court erroneously admitted hearsay

---

[10] Though unpublished, ***Rusk County v. A.A.***, Nos. 2019AP839 and 2020AP1580, unpublished slip op. (WI App July 20, 2021), *review denied* (WI Oct. 18, 2021) (Nos. 2019AP839 and 2020AP1580) is a one-judge opinion that may be cited under WIS. STAT. RULE 809.23(3)(b).

testimony from two experts regarding incidents cited by circuit court in finding committee dangerous).[11]

¶30    The County relies on this court's decision in ***Waukesha County v. I.R.T.***, No. 2020AP996, unpublished slip op. (WI App Nov. 4, 2020), but that case is materially distinguishable.[12]    In ***I.R.T.***, the subject individual argued that the circuit court had erred in relying on the hearsay testimony of several witnesses concerning events that led to his initial commitment and his prior condition.    ***Id.***, ¶10.    This court disagreed, noting that one of the experts had provided only "general statements regarding I.R.T.'s past behavior," the experts' reports had been received in evidence, and the circuit court had relied on the experts' opinions, not "the underlying hearsay facts," in extending the commitment.    ***Id.***, ¶12.    In contrast, the County here did not introduce Anderson's report into evidence and the circuit court based its determination of dangerousness on the specific events described in Anderson's hearsay testimony.

¶31    For these reasons, the circuit court erroneously exercised its discretion in admitting Anderson's hearsay testimony and relying on the events she described as the basis for its determination that Dennis was dangerous under the second standard.

---

[11]    ***Kenosha County v. L.A.T.***, No. 2022AP1730, unpublished slip op. (WI App Aug. 23, 2023) and ***Waupaca County v. G.T.H.***, No. 2022AP2146, unpublished slip op. (WI App Aug. 24, 2023) are also one-judge opinions that may be cited under RULE 809.23(3)(b).

[12]    ***Waukesha County v. I.R.T.***, No. 2020AP996, unpublished slip op. (WI App Nov. 4, 2020) is also a one-judge opinion that may be cited under RULE 809.23(3)(b).

## II.    Sufficiency of the Evidence

¶32    In assessing the sufficiency of the evidence, this court looks to the standard cited by the circuit court, WIS. STAT. § 51.20(1)(a)2.b.  *See D.J.W.*, 391 Wis. 2d 231, ¶40.  To establish dangerousness under that standard, the County had to prove that Dennis showed "a substantial probability of physical harm to other individuals" through evidence of either "recent homicidal or other violent behavior, or … evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm."  Sec. 51.20(1)(a)2.b.

¶33    Other than the inadmissible hearsay, the County presented no evidence establishing that Dennis was currently dangerous under the second standard.   The hearsay testimony was the only evidence that suggested the May 2022 incident occurred or that Dennis had previously become more violent and psychotic when he did not take his prescribed medication.  The County did not introduce evidence of any other violent behavior.   Nor did it introduce any evidence that Dennis's violent behavior or threats placed other persons in reasonable fear that he would harm them.  In addition, as previously explained, the County did not move to admit Anderson's report or the treatment records she reviewed into evidence.  It also did not present testimony from other persons with personal knowledge of the May 2022 incident or the prior deteriorations in Dennis's behavior.  Finally, in his own testimony, Dennis did not acknowledge that any of the behavior upon which the County relied occurred.  This court is left to conclude that the record lacks sufficient evidence to establish Dennis's dangerousness under the second standard.

### III.    Harmless Error

¶34    In recommitment proceedings, courts are to "disregard any error or defect … that does not affect the substantial rights of either party." WIS. STAT. § 51.20(10)(c).  Stated differently, this court must determine whether the circuit court's erroneous admission of Anderson's hearsay testimony was harmless error. *See S.Y.*, 156 Wis. 2d at 328; *Weber*, 174 Wis. 2d at 109.  Under the harmless error standard, an error will not justify reversal unless there is a "reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698. "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (quoting *State v. Dyess*, 124 Wis. 2d 525, 544-45, 370 N.W.2d 222 (1985)).  "[W]here the outcome of the action or proceeding is weakly supported by the record, a reviewing court's confidence in the outcome may be more easily undermined than where the erroneously admitted or excluded evidence was peripheral or the outcome was strongly supported by evidence untainted by error." *Martindale*, 246 Wis. 2d 67, ¶32.

¶35    This court concludes that the admission of Anderson's hearsay testimony regarding the May 2022 incident and Dennis's prior increases in violent and psychotic behavior when not taking medication affected his substantial rights because there is a reasonable possibility that without that testimony, the circuit court would not have found Dennis dangerous.  Given the lack of other evidence showing that Dennis was dangerous, and the court's express reliance on the hearsay as the basis for its decision, the erroneous admission of that testimony undermines this court's confidence in the outcome.  Accordingly, the error in admitting the hearsay was not harmless.

¶36 The County's argument to the contrary is not persuasive. The County contends that even setting aside Anderson's hearsay testimony, the evidence established Dennis's dangerousness under the fifth standard, WIS. STAT. § 51.20(1)(a)2.e. There are several problems with this argument. First, the County cites no legal authority that would allow this court to affirm Dennis's recommitment order based on this court's determination that the County established his dangerousness under a standard different from that relied on by a circuit court. Our supreme court has discouraged such mid-litigation switching and directed circuit courts to "make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶40. The supreme court imposed that requirement to provide a subject individual with "clarity and extra protection … regarding the underlying basis for a recommitment" and to clarify the issues for appellate review "and ensure the soundness of judicial decision making." *Id.*, ¶¶42, 44. The County's invitation to uphold the recommitment order under the fifth standard would frustrate both of these objectives.

¶37 In addition, the evidence the County says was sufficient under the fifth standard includes the hearsay testimony about Dennis engaging in increasingly threatening and dangerous behavior when he is not medicated. Anderson made clear in her testimony that she was simply relaying what was documented in Dennis's treatment records and what she had heard from other staff members.

¶38 Finally, the County's argument regarding the fifth standard is not well developed. The County asserts that it "methodically elicited testimony from Dr. Anderson concerning every element of the [fifth standard]," but nowhere in its brief does it explain what the fifth standard requires or identify which portions of

Anderson's admissible testimony establish each of its elements. The fifth standard is a lengthy provision that requires proof of the following:

1) The "advantages and disadvantages of and alternatives to accepting a particular medication or treatment [must] have been explained to" the individual;

2) The individual's mental illness renders him or her incapable of either "expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or … applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment"; and

3) The individual "evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions."

WIS. STAT. § 51.20(1)(a)2.e. As to the third element, the fifth standard states further that

> [t]he probability of suffering severe mental, emotional, or physical harm is not substantial … if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the

20

> individual will avail himself or herself of these services or
> if the individual may be provided protective placement or
> protective services under [WIS. STAT.] ch. 55.

Sec. 51.20(1)(a)2.e. Because the County does not connect Anderson's testimony to each of the elements, its argument is not sufficiently developed for this court to consider.[13]

## CONCLUSION

¶39 For the reasons stated above, the circuit court's orders extending Dennis's involuntary commitment and permitting involuntary medication and treatment are reversed.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[13] With respect to the involuntary medication order, this court need not discuss the evidence relating to that order because Dennis's sole basis for challenging the order is the invalidity of the recommitment order. The County does not argue that a separate and independent basis exists to affirm the medication order if this court concludes that the recommitment order is invalid. Accordingly, this court's conclusion that the circuit court erred in entering the recommitment order also requires reversal of the medication order. *See* WIS. STAT. § 51.61(1)(g).